```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SIDIKI WEAY,
                                                                    NOT FOR PUBLICATION
                                    Petitioner,                     **MEMORANDUM & ORDER**
                                                                    05-cv-3866 (CBA)
            -against-

GAYLE HAPONICK, Acting Superintendent of
Green Haven Correctional Facility,

                                    Respondent.
------------------------------------------------------------X
```
**AMON, Chief United States District Judge**.

Sidiki Weay, proceeding *pro se*, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He seeks to vacate his conviction, entered after a jury trial in New York state court, for second degree depraved-indifference murder, N.Y. Penal Law § 125.25(2). Weay asserts two grounds for relief: (1) that he was denied due process of law because the identification procedures used by the police created a strong likelihood of misidentification; and (2) that the evidence was insufficient to support his conviction for depraved indifference murder.

## BACKGROUND

### I. Underlying facts

The evidence adduced at Weay's trial established the following facts. On June 17, 1998, Weay was driving along Rockaway Boulevard in South Jamaica, Queens County, when a young man in a yellow jacket who was walking on the street "threw up his hands up" at Weay as he drove by. Shortly thereafter, Weay and his friend Jean Normil proceeded to search for the man in the yellow jacket. They came upon a group of four young men on the corner of 131st Street and Rockaway Boulevard, including the victim David Blackman, his friend Mark Cumberbatch, and two other friends named Denero and Raquan. David Blackman was wearing a yellow jacket.

1

Weay and Normil asked which of the men had insulted Weay by throwing up his hands, but the group denied knowing anything about the incident. Weay argued with Denero and hit him. The group started to back away and told Weay to calm down. At that point, Weay hit Mark Cumberbatch. Normil tried to break up the altercation and told Weay they should leave.

Weay pulled out a handgun and swung it around, grazing Cumerbatch's face with the gun. Weay raised his gun again, but Normil grabbed his arm and knocked his hand down. There were various other people out on the street that night, unassociated with the group of men. When Weay pulled out the gun, people on the street starting running away, and Weay fired the gun multiple times. One shot struck David Blackman in the back of the head. Weay fired additional shots and then fled the scene. David Blackman died as a result of the gunshot wound to his head. Five days later, on June 22, 1998, Weay surrendered to the police, accompanied by his attorney. Weay was charged with intentional murder in the second degree, NY Penal Law 125.25(1), depraved-indifference murder in the second degree, NY Penal Law 125.25(2), and criminal possession of a weapon in the third degree, NY Penal law 265.02(4).

After he was arrested, Weay appeared in a lineup administered by Detective Creegan of the New York City Police Department. The lineup was viewed by Normil and Cumberbatch. Weay was told to choose his seat in the lineup; he chose seat number 5. At that time, he was unaware that a photo array had been shown to both Normil and Cumberbatch four days earlier in which Weay's picture was identified by the number 5. Both witnesses had identified Weay as the person who shot David Blackman in the photo array, and both witnesses again identified Weay at the lineup.

## II. Suppression hearing

Before trial, Weay moved to suppress the lineup as unduly suggestive. He argued that Detective Creegan should have alerted Weay's counsel, prior to allowing him to choose his seat in the lineup, that the he had been identified in a photo array in a photo marked as number 5 by the same two witnesses who were about to view the lineup. Weay argued that it was unduly suggestive to have those same witnesses come in only a few days later and see him holding the same number in the lineup. The court denied the motion to suppress.

## III. Trial and direct appeal

The jury convicted Weay of depraved-indifference murder and weapon possession, but he was acquitted of intentional murder. He was sentenced to an indeterminate term of imprisonment from 22 years to life on the murder count, and a determinate term of imprisonment of 8 years on the weapon count, to run concurrently.

Weay, through retained counsel, appealed his conviction to the Appellate Division, Second Department, in May 2003. He raised both arguments that he now raises in his habeas petition: (1) that the identification procedure was suggestive because his number in the photo array and lineup were the same; and (2) the evidence presented at trial was legally insufficient to support his conviction for depraved-indifference murder.

As to the identification issue, Weay argued that it was unduly suggestive for him to be placed at number 5 in both the photo array and the lineup, which occurred only days apart. As to the sufficiency of the evidence question, Weay argued that the medical evidence established that the victim, who was the only intended victim, was shot at point-blank range from a distance of eighteen to twenty-four inches, and that this was thus an intentional murder, not a depraved-indifference murder. People v. Weay, 2 A.D.3d 468 (N.Y. App. Div. 2003).

The Appellate Division affirmed Weay's conviction on December 1, 2003. The court deemed the identification claim without merit. As to the sufficiency of the evidence claim, the court held that "[t]he evidence adduced at trial revealed that the defendant, who spontaneously opened fire into the street as several people ran to get away from him and shot the deceased in the back of the head, acted with a depraved indifference to human life." Id. at 469. The New York Court of Appeals denied Weay leave to appeal. People v. Weay, 2 N.Y.3d 208 (N.Y. 2004).

Weay brought three separate motions to re-argue his direct appeal, filed on on December 21, 2003, February 6, 2007, and May 27, 2009, respectively. He argued that the Appellate Division had overlooked evidence that this was an intentional murder. He also argued that there had been a change in the law regarding the standard for depraved indifference murder. All three motions to re-argue were dismissed by the Appellate Division. On July 25, 2008, Weay also brought a motion in the New York Supreme Court, Queens County, to set aside his conviction pursuant to New York Criminal Procedure Law § 440.10, arguing that the standard of review regarding depraved indifference murder had been altered and that, under this new standard, the evidence presented at trial was legally insufficient to support his conviction. The Supreme Court denied Weay's motion on November 26, 2008.[1]

**IV. Federal habeas petition**

Weay filed his habeas petition in this Court on July 22, 2005. Shortly thereafter he requested that the Court stay this action pending further proceedings in state court. The Court granted his request for a stay on October 13, 2005. The stay was lifted temporarily on March

---

[1] On July 2, 2009, Weay also brought a second § 440.10 motion to vacate the judgment of conviction on the ground that the trial proceedings were deficient because the State's witness, Mark Cumberbatch, was underage when he testified and did not have a parent or guardian present. The Supreme Court denied this claim as procedurally barred on November 12, 2009, because Weay never raised it before. Weay does not raise this claim in this federal habeas petition.

4

18, 2009, so that Weay could amend his habeas petition. Weay filed an amended petition on April 20, 2009. He also filed a memorandum of law in support of the amended petition on July 29, 2009. In May 2009, the Court reinstated the stay because Weay still had state court motions pending.

On January 29, 2010, the Court issued an order stating that Weay no longer had any claims pending in state court, and directing the State to respond to Weay's habeas petition. The State submitted its opposition to Weay's habeas petition on April 21, 2010. Weay filed his reply on July 28, 2010.[2]

## STANDARD OF REVIEW

A petitioner in state custody pursuant to a criminal judgment of a state court is entitled to federal habeas relief only if he can establish that he is being confined in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254.

When a federal claim is properly presented to the state courts and adjudicated against the petitioner on the merits, a petitioner is only entitled to federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) if the state court decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or . . . [was] based on an unreasonable

---

[2] Weay has also filed with this Court three letters, dated January 2, April 26 and July 06, 2011, respectively, that raise an issue unrelated to the two claims before the Court on this federal habeas review. In these letters, Weay claims that Jean Normil provided the police with two witness statements around the time of the incident in this case, one on June 18, 1998—the day after the murder—and the other four days later on June 22, 1998. Weay claims that the government has never turned over the second witness statement, which Weay believes would be prove his innocence. He has filed a New York Freedom of Information Law (FOIL) request with the District Attorney's Office, Queens County, but states that they refuse to produce the requested document. Weay states that this is a "Brady violation" that cannot be ignored, and asks this Court to intervene to help him secure the document in question. This request, however, and the documents at issue, appear unrelated to the instant petition for habeas relief, and there is no legal basis for this Court to interfere in this collateral matter. Weay has not moved to amend his habeas petition to add a claim for a Brady violation, and the Court does not construe his papers as indicating his intention to do so at this time. In any event, although the Court does not decide this issue, it appears that Weay would be face significant procedural hurdles in bringing such a claim, including statute of limitations concerns and exhaustion requirements.

5

determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(1)–(2); see also Williams v. Taylor, 529 U.S. 362, 405–06 (2000); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005). The Supreme Court has explained the requirements of § 2254(d) as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-413.

## DISCUSSION

### I. Suggestive identification procedures

Weay argues that he was denied due process of law when the trial court permitted the State to introduce evidence of the unduly suggestive lineup.

Under clearly established federal law, the admission at trial of a pre-trial identification violates the due process clause only if the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Neil v. Biggers, 409 U.S. 188, 197 (1972) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)). The only fact relied upon by Weay in support of his argument that the lineup in this case was unduly suggestive is that Weay was identified as "number 5" in both the lineup and the photo array, which were viewed by the same two witnesses. He does not suggest that the lineup consisted of fillers who were dissimilar in age or physical appearance, or that the lineup itself was otherwise conducted in an unduly suggestive manner.

The Court finds that it was not contrary to or an unreasonable application of clearly established federal law for the state court to find, based on the numbering issue alone, that the lineup in this case was not unduly suggestive. Weay does not cite, and the Court has not identified, any federal cases holding that a lineup is suggestive merely because the accused was identified by the same number in an earlier photo array. Nothing on this record indicates that the numbers did anything more than a provide a neutral label for the witnesses, or that the numbers affected their identification of the petitioner in any way. Accordingly, Weay is not entitled to relief on this claim.

## II. Sufficiency of the evidence

Weay's second claim is that the evidence adduced at trial was insufficient to convict him of depraved indifference murder. Under New York Penal Law § 125.25(2), an individual commits depraved indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person." The question here is whether the evidence presented at Weay's trial was sufficient to support a finding that Weay acted with "a depraved indifference to human life." Weay argues that the evidence presented at trial established that he intentionally killed David Blackman by shooting him at point-blank range, and that evidence of an intentional killing of this type cannot support a conviction for depraved indifference murder.

A habeas petitioner challenging his conviction on the ground that it was not supported by sufficient evidence "bears a very heavy burden." Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d. Cir. 1997). The Supreme Court recently reaffirmed the fundamental principle "that it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from the

7

evidence admitted at trial." Cavazos v. Smith, 132 S. Ct. 2, 5 (2011). Therefore, "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Id.; Jackson v. Virginia, 443 U.S. 307, 324 (1979) (holding that a petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt").

In addition to emphasizing the deference owed to a jury's verdict, the Supreme Court in Cavazos also "highlight[ed] the necessity of deference to state courts in § 2254(d) habeas cases," 132 S. Ct. at 7, reminding lower courts that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." Id. at 4. "The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Id. (quoting Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

In light of the Supreme Court's emphasis in Cavazos on the deference owed by federal habeas courts to both jury verdicts and the state court decisions upholding them, the Second Circuit recently revisited a habeas case in which, as here, the petitioner challenged his New York conviction for depraved indifference murder on the grounds of insufficient evidence. See Rivera v. Cuomo, 649 F.3d 132, 139 (2d Cir. 2011), reversed on rehearing – F.3d –, 2011 WL 6287960 (2d Cir. Dec. 16, 2011). In that case, the defendant's estranged wife was killed in her home by a single gunshot wound to the head. The government argued that Rivera intentionally shot his wife; the defense case was that Rivera's wife committed suicide and that Rivera had struggled with his wife in an attempt to take the gun away from her. The original panel opinion granted Rivera's habeas petition on the grounds that, under the law of depraved indifference murder that

8

existed at the time of Rivera's conviction, "no rational jury could have found Rivera guilty of depraved indifference murder, rather than intentional murder or reckless manslaughter." 2011 WL 6287960, at *1. Subsequent to the original panel decision, the Supreme Court issued its opinion in Cavazos, and the respondent in Rivera moved for panel rehearing. On rehearing, the Second Circuit, citing Cavazos, held that although the evidence of heightened recklessness was slim, "giving the state courts and the jury the utmost deference, we cannot find that the evidence was *so* completely lacking that *no* rational jury could have found Rivera guilty of depraved indifference murder." Id. (emphasis in original). Accordingly, the Second Circuit ultimately denied Rivera's habeas petition.

The evidence here to support a finding of depraved indifference is far more compelling than what was found sufficient in Rivera. At Weay's trial, Cumberbatch testified that there were "more than ten" people standing on the street at the time of the incident. (Excerpt of Trial before Hon. Randall T. Eng, Jan. 22, 2001, at 51.) When Weay pulled out his gun "everybody started running." (Id. at 28.) Cumberbatch testified that he and Raquan ran across the street, while David Blackman and Denero ran down 131st street. (Id.) As Cumberbatch started running, he "just started hearing shots" that were coming from the other side of the street." (Id. at 17.) Cumberbatch looked back and saw Weay standing "in the middle of the street shooting." (Id.) Weay was shooting "down 131[st street] . . . towards David and Denero." (Id. at 29.) In all, he heard Weay fire more than five shots. (Id. at 89.) Cumberbatch saw his cousin David Blackmun fall as the shooting occurred. (Id.)

Normil also testified at trial that after Weay pulled out his gun "the shooting started and I started backing up, whatever, and everybody started running, everybody started running, started moving back and then I saw somebody get shot." (Excerpt of Trial before Hon. Randall T. Eng,

9

Jan. 23, 2001, at 35.) He testified again later, "Everybody was running. There was a lot of people running. I don't even know. . . . Everybody, the whole boulevard cleared." (Id. at 91.)

Finally, Dr. Corinne Ambrosia, the medical examiner who testified at trial, explained that Blackmun was shot in the back of the head. (at 100). Blackmun had scrapes on his hand, as well as on his face and chin, that were "consistent with an individual who was running" and shot from behind. (Id. at 102.) Contrary to Weay's assertion, Dr. Ambrosia did not testify that Blackmun was shot from a distance of eighteen to twenty-four inches. Rather, when asked if she could tell how far away Blackmun was from the person who shot him, Dr. Ambrosia explained that the absence of certain markings known as "fouling or stippling" around the gunshot entrance wound indicated only that the gun was fired from "greater than eighteen or twenty-four inches from Mr. Blackmun's head." (Id. at 109 (emphasis added).) She did not say with any further certainty just how far away the gun was. (Id.)

The Appellate Division rejected Weay's insufficient evidence argument on the ground that this evidence "revealed that the defendant, who spontaneously opened fire into the street as several people ran to get away from him and shot the deceased in the back of the head, acted with a depraved indifference to human life." People v. Weay, 2 A.D.3d 468, 469 (N.Y. App. Div. 2003).

The parties devote significant portions of their briefs to the question of whether, at the time Weay's conviction became final in November 2004, New York law precluded a finding that a defendant acted with "a depraved indifference to human life" when there was compelling evidence that the defendant acted with the intent to kill. To be sure, New York depraved indifference law has undergone a significant change on this issue in the last decade, and it is now clear that "a one-on-one shooting or knifing (or similar killing) can almost never qualify as

10

depraved indifference murder." People v. Payne, 3 N.Y.3d 266, 272 (2004); see Rivera, 649 F.3d at 137-39 (describing the changes in New York law on this issue). However, the Court finds that it need not address when this change in New York law occurred. Even assuming that Weay is entitled to the benefit of the more recent New York cases on this issue, on this record the Court "cannot find that the evidence was *so* completely lacking that *no* rational jury could have found [Weay] guilty of depraved indifference murder." Rivera, 2011 WL 6287960, at *1.

It has always been clear under New York law that a defendant can be convicted of depraved indifference murder when he fires a gun into a crowd of people and kills someone. People v. Jernatowski, 238 N.Y. 188, 191 (N.Y. 1924) (holding that "when the defendant fired two or more shots into the house where he knew there were human beings he committed an act which the jury certainly could say . . . evinced a wicked and depraved mind regardless of human life"); People v. Fenner, 61 N.Y.2d 971 (N.Y. 1984) (upholding conviction for depraved indifference murder where defendant fired into a fleeing crown); Gonzales, 1 N.Y.3d at 464 ("Depraved indifference murder is exemplified by a defendant—unconcerned with the consequences—who fires into a crowd.") (citing Jernatowski, 238 N.Y. at 191); Payne, 3 N.Y.3d at 271 (noting that depraved indifference murder is exemplified by "homicides in which a defendant lacking the intent to kill (but oblivious to the consequences and with depraved indifference to human life) shoots into a crowd or otherwise endangers innocent bystanders"). Based on the trial evidence discussed herein, and applying the twofold deference owed to the jury's verdict and the state court decision finding the evidence sufficient to support that verdict, this Court cannot say that "no rational trier of fact" could have found that Weay shot into a fleeing crowd of people, without regard for the consequences to human life, and killed someone. Thus, Weay is not entitled to federal habeas relief on his sufficiency of the evidence claim.

11

## CONCLUSION

The petition is denied. No certificate of appealability shall issue because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment and to close this case.


SO ORDERED.

Dated: Brooklyn, N.Y.
      January 5, 2012

                                              /s/
                                      Carol Bagley Amon
                                      United States District Judge